Please call the case. 122-1926 W.C. Impact Staffing Appellant by Michael Baggett v. Illinois Workers' Compensation Comm'n, Penglis Corporation, Appalee by Jigar Desai. Mr. Baggett, you may proceed. Good morning, Your Honors, Counsel, Mike Baggett on behalf of Impact Staffing the Appellant. This is our appeal regarding the decision of the Commission reversing the arbitrator's decision regarding whether or not the petitioner was an employee of Impact Staffing on the date of the staffing company who had employed the petitioner as a day employee for a period of time who had assigned the petitioner to work for various companies prior to working for SERPRO. He had worked for a prior company for an extended period of time. For this assignment, he was a daily client where employees would be assigned to SERPRO on a daily basis. Mr. Flores, the petitioner had worked for SERPRO for a period of time. I think it was for a week or two prior to the accident on July 24th of 2018. He had last worked for SERPRO on the Friday before July 24th, 2018. That was the last time that he was assigned to work for SERPRO pursuant to Impact Staffing. On July 23rd, Impact Staffing was requested to provide employees to SERPRO requested by Mike Chiodo, who is the owner of SERPRO. They advised Mr. Chiodo that they would provide employees to SERPRO on July 23rd. We did not provide employees to SERPRO on that day, the 23rd. The 24th, the day of the accident, Mr. Chiodo had asked for SERPRO to provide two employees to SERPRO on July 24th, the day of the accident. SERPRO did provide two employees to SERPRO on that day. They were not the petitioner, Mr. Flores, on that day of the accident, July 24th, 2018. Mr. Flores was not contacted or provided to work for SERPRO by anyone from Impact Staffing. He was contacted directly by SERPRO to work for SERPRO on July 24th, 2018. That's the reason why we are here today. It is our contention and, quite frankly, what the arbitrator ruled on when we tried this case before him, that the petitioner was not an employee of Impact Staffing on July 24th, 2018. He was a direct employee of SERPRO on that date because SERPRO had reached out and obtained Mr. Flores directly and not hired him through Impact Staffing. The commission had overruled that, indicating that they relied on three reasons. One, that the agreement between Impact and SERPRO had not been terminated. That's clear. Mr. Chido, the owner of SERPRO, contacted Impact Staffing on July 23rd and requested two employees. Those employees were sent to SERPRO on that day. Those two employees were not Mr. Flores. That's documented by the time cards. They were two other employees that were requested by SERPRO. Those employees were sent there. We did not contact Mr. Flores to work that day. That's correct. We don't dispute that. The agreement between SERPRO and Impact Staffing was still in effect on the day of the incident. Counsel, let me interject. Isn't there evidence that Impact Staffing, in fact, tried to contact the claimant on July 24th? That's correct. They did not reach him. Okay. As a result, they sent two separate employees to work at SERPRO on that day. They sent the two employees that were requested. Because he was not reached, we were not able to glean any employer-employee relationship with the fact that this contact is being made to send the workers out or being attempted? Well, we filled the request that was made by the owner of the company. They requested two employees. We attempted to request Mr. Flores. We couldn't reach him. So, we filled that order with two other employees. Those two employees were sent there. We didn't send more than that. We sent what was requested. What would your status then be with those two other employees that did get Impact Staffing? If they would have asked for two employees, we wouldn't have sent three. They would have asked us, why are you sending three? We asked for two. They asked for two. We sent two. The commission decision seems to relate to the fact that based on what the petitioner thought or may have thought regarding what his employment status was, that's not how the agreement works. The agreement was between Impact Staffing and CERPRO. CERPRO went outside of that agreement and contacted the petitioner outside of what they did with CERPRO when they requested the initial two employees. Mr. Chiado, the owner, is the one who asked for two. We gave them the two as requested. Mr. Garcia then contacted Mr. Flores. Mr. Garcia is the supervisor or general manager or the site supervisor who then contacted Mr. Flores outside of Impact Staffing directly who brought him forward. It was not through Impact Staffing to work there. As indicated, as the arbitrator found, he was not an employee of Impact Staffing at the time of the accident. It's unfortunate, but it wasn't through the normal channels in which Mr. Flores came to work for CERPRO on the day of the accident. This is documented by the time cards that were submitted that show that they asked for two employees. Two employees were given. What do we do with the claimant's testimony that he was asked at the end of the day, that first day, that you're working for CERPRO, did you contact Impact Staffing? He responds, not at all. Impact Staffing told me that if they needed me to go back to work, to just keep working, that I did not have to call them. Now, what are we to do with that if the commission believed it? That goes to the petitioner's state of mind regarding what happened. No, it goes to the petitioner's credibility. Because if you told him he didn't have to call in if they still had work, the only thing he had to do was go back to work as long as they had work, then in that particular case, if the commission believed that, you're a loaning employer. What we have to go by is what the owner did on July 23rd when he contacted Impact Staffing pursuant to the agreement and requested two employees. There's an agreement for a reason so that Impact Staffing receives payment when they submit the time cards to CERPRO, so they receive payment for submitting these employees. The fact that they went outside of this agreement for whatever reasons, maybe to avoid paying whatever the additional fees were, I'm not sure, but there's a reason why there's an agreement and the reason why it has to be done this way. I'm not sure why Mr. Garcia did that. What do we do with Garcia's testimony where he said that on the morning of July 24th, he called Impact Staffing and advised them that he had three of their employees there, Davis, Giron, and the claimant, and that Impact Staffing raised no objection? I'm going to correct you for a moment, Your Honor. He said that Mr. Flores was there. He did not call him an employee, and what Mr. Ortega said was Mr. Flores is not authorized to be there as an Impact Staffing employee, and if you look at what Mr. Chioda said, the owner of CERPRO, Mr. Chioda asked for two Impact Staffing employees, and the two Impact Staffing employees were there. Well, I'm looking at Garcia's testimony. He said he told Impact Staffing that the claimant was at the job site and he just wanted confirmation for the claimant. Did they raise any objection to the claimant being at work? No. Did they say the claimant was not authorized to work? No. Was anyone else present with you when you made that phone call? I don't recall. Did Impact raise any objection to the other individuals who were going to work that day? Garone, Caesar, the Villa answered no. Yeah, go ahead. That's not what Mr. Ortega testified to, the gentleman who allegedly had this conversation with Mr. Garcia. No, but it's what Garcia said. The question is, isn't it for the commission to decide whether they're going to believe Garcia or they're going to believe your officer? Well, except for you have the objective proof of the time cards where they only sent two people to work for them. That's the objective proof of what was supposed to be done on the 24th. Well, Garcia said he told him he had three people there, and he asked him if he had any objection. He said no. And that's disputed by the time cards and disputed by the testimony of Mr. Ortega. So it's a credibility issue. Who gets to make that decision? But it's not just a credibility issue. It's outside of the contract itself that said you have to get it. They went outside of the contact, what was requested in the original confirmation with Mr. Chioda. Well, if he never had the conversation that he said he had and never got the responses that he claimed he received, he'd probably be correct. But now the question is, he said, did you raise any objection? What did they say? They said fine. What did you say to them? They claim it was at the job site, and we just wanted confirmation of work. What did they say? Fine. And again, it's disputed by what Mr. Ortega said and disputed by what was actually, by the physical evidence, by the time cards and what was submitted. Mr. Baggett, I concede that it's disputed. There's no question it's disputed. My question is, who gets to decide which version is true? Well, except for if you look at the underlying decision by Arbitrator Frew, if he made that decision, and if you look at the decision based on what the commission decided, they looked at whether or not, what the petitioner's thoughts were. So they don't even look at what the arbitrator held in his original decision. Counsel, do they have to look at what the arbitrator had to say? The commission is the fact finder, not the arbitrator. Unless, of course, they affirm and adopt. It's true. Okay, go ahead. Go ahead. I see the yellow light going, so I'll reserve my time. Well, you have five minutes. You got some time left. You got two minutes, then, right now. Okay. So, again, going back to what the evidence, it's clear that the SERPRO asked for two employees. That's what was given. They went outside of the terms of the agreement with the impact staffing to obtain Mr. Flores outside of our contact, outside of what we did. The time cards submit that. We request that the commission decision be overturned, and that Arbitrator Frew's decision finding that the 2018 be restated. Thank you for your time. Mr. Baggett, you'll have five minutes in reply. Mr. Desai? Thank you, Your Honor. My name is Jigar Desai, and I represent the appellee, Penguis, doing business as SERPRO. The commission's decision that petitioner was an employee of both the appellee and the petitioner is against the manifest way to the evidence. As this court is well aware, the standard of review as to whether the commission's finding on factual determination is incorrect is whether or not it's against the manifest way to the evidence, and it is not this court's job to substitute the judgment of the commission on factual issues. Counsel, we understand the standard. Why don't you just tell us why it's not against the manifest way? Yes, as Your Honor correctly pointed out during appellant's argument, the commission resolved these factual issues and factual disputes related to whether or not Mr. Flores was able to work at SERPRO on July 24th and considered the conflicting testimony and conflicting evidence, including the timesheets, including the service agreement, and resolved that conflicting testimony and evidence in favor of a finding that petitioner, Mr. Flores, was employed by both Impact Staffing and SERPRO. There is sufficient evidence in the record to support the commission's finding. There's no dispute that Mr. Flores was working for SERPRO by way of Impact Staffing prior to July 20th. He was assigned to work for SERPRO by Impact Staffing on July 10th, and he continued working for SERPRO through July 20th. The dispute over employment conveniently only arises on the accident date, July 24th. The commission found there was no evidence of record that the agreement between the two employers was terminated, and counsel for appellant concedes same. There is evidence of an ongoing contractual arrangement as they sent two other employees to work on July 24th. Therefore, there is no dispute that a loaning and borrowing relationship at least existed between Impact and SERPRO. Now, there is also sufficient evidence in the record to support the commission's finding that Impact never severed that employment relationship with Mr. Flores. The commission found that there was no evidence that Mr. Flores was ever terminated by Impact at any point prior to July 24th. In fact, Impact admits it tried to contact Mr. Flores to work on July 24th for SERPRO. Now, appellant argues Mr. Flores wasn't authorized to work. As I noted earlier, there's conflicting testimony on the issue with which the commission resolved in favor of a finding that there is sufficient evidence in the record to support he was both a loaning or that, excuse me, that Impact was the loaning employer and SERPRO was the borrowing employer. The commission specifically found Mr. Garcia of SERPRO credible on the issue of how employees of Impact were contacted to come work for SERPRO. I'd also note that Mr. Flores testified about his pre-July 24th work for Impact Staffing. He testified that he did not need to get express authorization from Impact Staffing to return to work for their clients, testifying that Impact Staffing told him, quote, they told me if the supervisor gives you work, you can keep working. Therefore, Mr. Flores' understanding of the relationship and how he can accept work from Impact Staffing's clients was that if he was assigned to a particular employer, he can go back to work for them, whether it's a long-term or a short-term assignment. Now, Mr. Flores works for SERPRO by way of Impact the week of July 10th through July 18th. He works on July 20th, which is a Friday. Mr. Flores testifies that Mr. Garcia of SERPRO, excuse me, Mr. Garcia of SERPRO told him he should return to work the following week and Mr. Flores acknowledged that he would that week. He credibly testified that no one at Impact prior to July 24th of that week ending July 20th told him that he wasn't authorized to work the following week or that he was terminated by Impact Staffing. He testified that over the weekend, including July 23rd, when he couldn't work due to a personal problem, that no one at Impact contacted him to say that he was terminated or that he wasn't authorized to continue working for SERPRO. Mr. Garcia also credibly testified that this is how their relationship worked between Impact and SERPRO, that he would obtain the direct contact information for Impact's employees and text them and tell them to come back to work. That's exactly what occurred on July 24th. On July 24th, Mr. Flores comes to the work site based on his understanding of how he was supposed to accept work for Impact Staffing. He testified a phone call took place with Mr. Garcia on July 24th and Impact Staffing at SERPRO. He stated that he heard Mr. Garcia name all three of the employees of Impact Staffing who were on site and heard Mr. Garcia say to Impact Staffing that he needed them to work. Mr. Garcia also testified about that phone call and said, as Justice Hoffman noted, that Impact Staffing indicated fine when told that all three of these employees were on site. Mr. Ortega, the witness for Impact Staffing, did not necessarily dispute this characterization. He testified, quote, I asked him, Mr. Garcia, if Carlos was working that day and the previous week, and Marco Garcia says, you know what, he's next to me, end quote. Mr. Ortega testified that he told Mr. Garcia that Mr. Flores, quote, was not supposed to be there because he's not set up to Mr. Ortega's question was an admission in a sense. He tried to get Mr. Flores to come to work on July 24th but was unable to make contact with him. There's no other reason for him to ask that question of Mr. Garcia unless Impact was trying to get Mr. Flores to come to work on July 24th. Also, significantly, when this discussion took place, there was no testimony from Mr. Ortega, Mr. Garcia, or Mr. Flores that Mr. Ortega told Mr. Garcia that Mr. Flores can't work that way, he's not authorized to work, and that he's no longer an employee of Impact Staffing. Mr. Ortega, the witness for Impact Staffing, was not credible. He did not have personal knowledge or a recollection of anything with respect to daily or weekly job assignments. He was the individual on the call on July 24th. On direct examination, he testified that he would call daily to tell him to report to work for ServPro, but on cross-examination, he testified that actually wasn't true and that he did not have any personal knowledge of him or anyone else calling Mr. Flores on a daily basis to report to work the following day. It's ServPro's position that there is conflicting testimony and evidence as to the issue of whether or not Mr. Flores was authorized to work for ServPro by Impact Staffing on July 24th. The commission considered that conflicting testimony and evidence. They clearly indicate that they considered the testimony, the conflicting testimony and conflicting evidence, and came to a conclusion that Mr. Flores was employed by both Impact Staffing and ServPro on the date of accident, and that commission decision should not be disturbed as it was not against the manifest way to the evidence. Thank you. Any questions from the court? No? Okay, thank you, Mr. Desai. Mr. Baggett, you may reply. I'm just going to clear up a couple of things here. First of all, whether or not Impact Staffing did not terminate Mr. Flores' employment the following week of 23rd and 24th, as Mr. Desai indicated, it's not because they didn't. It's because they couldn't. As the testimony indicated, they couldn't contact Mr. Flores. They couldn't reach Mr. Flores. They couldn't reach him for any purpose, either to have him to work or to have him not to work. There was no way. They couldn't reach him, and that's clear. And Mr. Flores testified to that, that his phone was having to say that they didn't terminate him is not necessarily genuine. Regarding the facts of the case, I'm not going to go over them again. The testimony is clear. The objective evidence regarding what was asked for by ServPro is consistent. They asked for two employees that day. That was the agreement between ServPro and Impact Staffing. That's they asked for. That's what Impact Staffing provided. Those two employees were not Mr. Flores. Did that agreement, as you call it, the agreement between ServPro and Impact Staffing, they originally asked for two people. ServPro was sent two people, not the claimant. Regardless of who called or how the claimant found out that the job was on that day, regardless of how he found that out, he shows up, ServPro contacts Impact Staffing and says, hey, three of your guys are here, tells them who it is, and is that okay? If Impact Staffing, as the testimony allegedly points out, says fine, doesn't that alter the agreement and make it that Impact Staffing provided three people? No, because that's what was asked for in the original agreement. Let's get past the original agreement. It's been modified when they call and say three of your guys showed up. Can we use them? I'm putting words in their mouth, but you see what I'm saying. Once they were notified that three of their employees were at the job site, and was it okay, and allegedly someone from Impact Staffing said fine, doesn't that alter the original agreement, and now we have a new agreement? That's not what Mr. Ortega testified to. That's not what was agreed to. There was some testimony that that's what occurred. The chain of events led to a phone call to Impact Staffing saying, hey, three of your guys are here. Is it okay? Fine. There was a phone call, yes. We dispute the nature of that phone call. Okay. So, as I stated before, I request that the court reinstate the decision of Arbitrator Faroukhzadeh. Thank you for your time this morning. Okay. Thank you, Mr. Baggett, Mr. Desai. Thank you for your arguments this morning. They'll be taken under advisement and written